UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80254-Civ-Hurley/Hopkins

TIARA CONDOMINIUM ASSOC. INC.,

Plaintiff,

vs.

MARSH & MCLENNAN COMPANIES, INC.,
MARSH, INC., and MARSH USA, INC.,

Defendants.

_____/

## REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS (DE 181)

**THIS MATTER** has come before this Court upon an Order Referring Defendant Marsh USA, Inc.'s Motion for Attorneys' Fees and Costs to the undersigned United States Magistrate Judge for a Report and Recommendation.  (DE 190).  Presently before the Court is Defendant's motion (DE 181), Plaintiff's response (DE 200), and Defendant's reply (DE 209).  The matter is now ripe for this Court's review.[1]

_____

[1] Plaintiff also filed a motion for oral argument on Defendant's motion for attorney's fees (DE 201), however, a court is not required to hold a hearing prior to awarding attorney's fees, and the Court finds that such a hearing is unnecessary to resolve this motion.  *See Thompson v. Pharmacy Corp. of America*, 334 F.3d 1242, 1245 (11th Cir. 2003); *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000)(attorney's fee awards are generally based on affidavits and billing records submitted to the court).  Therefore, Plaintiff's motion for a hearing is **DENIED.**  (DE 201).

## BACKGROUND

Plaintiff is a condominium association that initiated this breach of contract lawsuit relating to property damage it sustained during the 2004 Florida hurricane season.  (DE 57). Prior to the 2004 hurricanes, Plaintiff retained Defendants to act as insurance advisors, assisting the condominium association in assessing its insurance needs and in procuring the appropriate insurance for its property.  Based on Defendants' advice and expertise, Plaintiff obtained a windstorm policy from Citizens Property Insurance Corporation in April 2004, which Plaintiff believed provided per occurrence coverage of up to $50 million dollars.  (DE 57 at ¶ 19-20). Thereafter, in September 2004, Plaintiff sustained substantial hurricane damage from two separate storms.  When Plaintiff attempted to collect on the insurance, however, Citizens claimed that Plaintiff was only entitled to recover a total of $50 million dollars for both occurrences because such was the policy limit, regardless of the number of occurrences.

Plaintiff filed a lawsuit against Citizens demanding that it make another $50 million dollars available to cover the loss from the second storm.  During the course of that lawsuit, Plaintiff procured opinions from five separate insurance experts who supported Plaintiff's position that the policy provided per occurrence coverage, rather than an aggregate limit of $50 million dollars.  That lawsuit ended with Plaintiff obtaining a very favorable settlement, whereby Citizens paid Plaintiff a total of $89 million dollars.  However, because that lawsuit ended in a settlement, no judicial interpretation of the policy was ever rendered.  (DE 179).

Notwithstanding Plaintiff's position in its lawsuit against Citizens, on October 19, 2007, Plaintiff filed the instant lawsuit against Defendants in the Southern District of New York, asserting a completely contrary position.  In its complaint, Plaintiff claimed that Defendants had

been instructed to purchase per occurrence policy limits of $50 million each, but failed to do so. (DE 57 at ¶ 29).  Plaintiff sought damages in excess of $70 million dollars.  (DE 110 at pg 2).[2]

On June 26, 2008, the three Defendants made offers of judgment to Plaintiff.  Plaintiff accepted offers from two of the Defendants, for a total of $5,000.00, and dismissed them from the lawsuit.  (DE 69, 71).  The third offer, made by Defendant Marsh USA, Inc. (hereinafter "Defendant" or "Marsh"), was in the amount of $70,000.00, and sought the dismissal of Plaintiff's lawsuit against it with prejudice.  *See* Affidavit of Lawrence O. Kamin, Esq. at ¶ 29-30 (DE 183).  The Court granted Plaintiff an extension of time until September 1, 2008 to respond to the offer, but Plaintiff never accepted Defendant Marsh's offer.  *Id.* at ¶ 32.

Defendant Marsh subsequently moved for summary judgment.  On March 3, 2009, the District Court granted Defendant's Motion for Summary Judgment, finding that Defendant "did in fact obtain a policy for Tiara that met Tiara's specifications," and that, therefore, Defendant Marsh did not breach its contract with Plaintiff.  (DE 179 at pages 5-7).  The District Court found that "[e]xamination of the policy itself confirms that the policy is best interpreted as containing a per-occurrence, rather than aggregate limit."  (DE 179 at page 5).  In other words, Plaintiff's lawsuit against Citizens had merit and there was a high likelihood that Plaintiff would have prevailed in its interpretation of the policy had it not opted to settle with Citizens.

With the instant motion, Defendant seeks recovery of legal fees and costs incurred since making its offer of judgment pursuant to Section 768.79 of the Florida Statutes ("Section 768.79").  Specifically, Defendant seeks $2,749,452.00 in attorneys' fees and $169,287.00 in

---

[2]  Shortly after the case was filed, Defendants filed a motion to transfer the case to the Southern District of Florida.  Plaintiff initially objected to the transfer, but ultimately stipulated to it.  The case was transferred to this District on March 11, 2008.

costs.  (DE 182).

Plaintiff objects to the motion, claiming that Defendant's offer of judgment is invalid because it failed to include a certificate of service and because Defendant never filed the offer. Plaintiff also claims that the offer was not made in good faith and that, in any event, the amount of attorneys' fees sought is "patently unreasonable and unjustifiable."  (DE 200 at pages 2, 12-13).

**DISCUSSION**

**1.  Defendant's Status as Prevailing Party**

A prevailing party is the one who succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Sanchez v. Swire Pacific Holdings, Inc.*, 2009 WL 2005272, *3 (S.D. Fla. July 9, 2009)(*quoting Moritz v. Hoyt Enter., Inc.*, 604 So.2d 807, 810 (Fla.1992)("[T]he fairest test to determine who is the prevailing party is to allow the trial judge to determine from the record which party has in fact prevailed on the significant issues tried before the court.")).

Here, the parties do not dispute that in light of the Court's entry of judgment in Defendant Marsh's favor, it is the prevailing party in this action.  *See Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 791 (1989)(a prevailing party is one who has "succeeded on any significant claim affording it some of the relief sought").

Based on this finding, the Court will first address whether, under Florida law, Defendant is entitled to an award of attorney's fees and costs based on its Offer of Judgment.[3]  Thereafter,

---

[3]  The Court will apply Florida law because under the *Erie* doctrine, federal courts sitting in diversity must apply the substantive law of the forum State.  *See Gasperini v.Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)(*citing Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

the Court will consider the reasonableness of the attorneys' fees sought by Defendant.

## 2.  Defendant's Offer of Judgment

On June 26, 2008, Defendant served its Offer of Judgment on Plaintiff pursuant to Fla.

Stat. § 768.79.  *See* Defendant's Offer (DE 183, Exhibit 1).

Section 768.79 of the Florida Statutes provides in relevant part,

> [i]n any civil action for damages filed in the courts of this state, if a
> defendant files an offer of judgment which is not accepted by the
> plaintiff within 30 days, the defendant shall be entitled to recover
> reasonable costs and attorney's fees incurred . . . from the date of
> filing of the offer if the judgment is one of no liability . . .
>
> An offer must:
>
> (a) Be in writing and state that it is being made pursuant to this
> section.
>
> (b) Name the party making it and the party to whom it is being
> made.
>
> (c) State with particularity the amount offered to settle a claim for
> punitive damages, if any.
>
> (d) State its total amount.
>
> The offer shall be construed as including all damages which may
> be awarded in a final judgment.

Fla. Stat. § 768.79(1), (2)(2005).[4]  The statute also states that a court can disallow an award of

---

This concept extends to awards for attorney's fees.  The Eleventh Circuit has deemed Florida's
Statute §768.79 to be substantive for *Erie* purposes and, therefore, it must be applied in diversity
actions, such as this, where the court is considering a prevailing party's entitlement to attorney's
fees following an offer of judgment.  *See McMahan v. Toto,* 311 F.3d 1077 (11th Cir. 2002).

[4]  Although § 768.79 refers to the "date of filing," courts have interpreted this to mean the
date the offer was served on the plaintiff, since there is no requirement that an offer of judgment
be filed with the court until it becomes necessary as a means of recovering attorney's fees.  *See*

attorney's fees and costs if it finds that the offer was not made in good faith.  Fla. Stat. § 768.79(7)(a).

In addition to this statute, Florida has also adopted a corollary rule which largely duplicates § 768.79, but includes additional procedural requirements for offers of judgment that are not contained in the statute.  The rule states that "[a] proposal shall be served on the party or parties to whom it is made but shall not be filed unless necessary to enforce the provisions of this rule."  Fla. R. Civ. P. 1.442(d).  The rule also states that an offer of judgment must include a certificate of service.  Fla. R. Civ. P. 1.442(c)(2)(G).

### A.  Validity of Defendant's Offer

Plaintiff does not dispute that the contents of Defendant's offer comply with § 768.79. However, Plaintiff contends that Defendant's offer of judgment is invalid because it failed to include a certificate of service as required by Rule 1.442 and because Defendant did not file the offer.  (DE 200 at page 13).

As an initial matter, the Court notes that Defendant did file its offer of judgment as an exhibit to the instant motion.  (DE 183, Exhibit 1).  Given that Rule 1.442(d) does not require the filing of the offer until such is necessary to recover attorney's fees and costs, the Court finds that Defendant complied with the rule's filing requirement.

With regard to Plaintiff's claim that the offer is invalid because Defendant failed to attach a certificate of service at the time the offer was tendered, the Court finds such argument to be unpersuasive.  First, Plaintiff does not dispute that it was served with the offer of judgment on

_____

*Morris v. Arizona Beverage Co., L.L.C.*, 2005 WL 5544961, n.8 (S.D. Fla. Feb. 9, 2005), *Report and Recommendation Adopted,* 2005 WL 5544963 (S.D. Fla. Sept. 27, 2005).

June 26, 2008.  In fact, Plaintiff fully acknowledges that it received the offer on that date.  *See* Plaintiff's Response in Opposition (DE 200 at page 5);  Plaintiff's Motion for an Extension of Time (DE 72 at page 2).  Moreover, Defendant has since corrected its oversight by providing a certificate of service.  *See* Affidavit of Lawrence O. Kamin, Esq. at ¶ 29-30 (DE 183).  Finally, the purpose of a certificate of service is to provide a basis for determining whether an offer is timely and provide a deadline for a response.  Here, there is no timeliness issue and Plaintiff fails to demonstrate that it suffered any prejudice resulting from the lack of a certificate of service.  *See Bailey v. Chamblee*, 697 So.2d 972, 973 (Fla. Dist. Ct. App. 1997)(court rejected offeree's claim that the offer of judgment was a nullity because it did not contain a certificate of service because proof of service was subsequently provided).  *See also Morris v. Arizona Beverage Co., L.L.C.*, 2005 WL 5544961, *9 (S.D. Fla. Feb. 9, 2005)(court rejected plaintiff's claim that defendant's motion for attorney's fees should be denied due to defendant's failure to file a copy of the fee agreement; court noted that defendant had since cured the deficiency and that plaintiff had demonstrated no prejudice).

In any event, it is unclear that Rule 1.442(c)(2)(G) even applies in this case.  As is noted above, the *Erie* doctrine requires federal courts sitting in diversity to apply the law of the forum State to substantive issues, and federal law to procedural issues.  *See Gasperini v.Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)(*citing Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  The Eleventh Circuit has already deemed Florida's Statute §768.79 to be substantive for *Erie* purposes and, therefore, it is applicable to this case.  *See McMahan v. Toto,* 311 F.3d 1077 (11th Cir. 2002).

The applicability of Florida's Rule 1.442, however, is more complicated and this Court is

not convinced that it is obligated to apply Florida's procedural rule requiring a certificate of service. *See Buziashvili v. Inman*, 106 F.3d 709, 719 (6th Cir. 1997)("in a diversity action a federal court is not bound by state procedural rules"). *See, e.g., Denton v. United States*, 2006 WL 358273, *3 (N.D. Ga. Feb. 15, 2006)(federal court sitting in diversity declined to apply state's medical authorization requirements because they were procedural); *Hartnett v. Catholic Health Initiatives Mountain Region*, 47 F.Supp.2d 1255, 1256 (D. Colo. 1999)(court declined to apply state's cost bond statute because it was procedural in nature and therefore inapplicable in federal court).

Notably, there is no comparable provision in the federal rules requiring a valid offer of judgment to include a certificate of service.[5]  It is well settled that when there is no federal rule controlling on an issue, courts should use the "outcome determinative test" to determine whether a state's rule is actually substantive, or merely procedural, "while keeping in mind *Erie*'s disdain for forum shopping and inequitable administration of the laws." *Fagin v. Gilmartin*, 432 F.3d 276, n.2 (3d Cir. 2005).  The court should only apply the state's rule if it is outcome determinative. *See Friedman v. Benenson Capital Co.*, 2007 WL 1518935, *1 (S.D. Fla. April 27, 2007)(*citing Guaranty Trust Co. v. York*, 326 U.S. 99, 109-10 (1945). *See also RTC Mortg. Trust v. Fidelity Nat. Title Ins. Co.*, 981 F.Supp. 334, 341 (D.N.J. 1997); *Knauer v. Johns-Manville Corp.*, 638 F.Supp. 1369, 1377-78 (D. Md. 1986).

Application of the Supreme Court's "outcome determinative test" indicates that Florida's

---

[5]  In fact, there is no provision in the federal rules whereby a prevailing defendant can recover its attorney's fees following an offer of judgment.  Fed. R. Civ. P. 68 refers only to the recovery of costs when there is a judgment in favor of the plaintiff that is less favorable than the offer.  Therefore, Rule 68 is inapplicable to this case. *See Exemar v. Urban League of Greater Miami, Inc.*, 2009 WL 259677, 83 (S.D. Fla. Feb. 4, 2009).

rule requiring a certificate of service is strictly procedural and not substantive because there is

nothing about the rule that would make "so important a difference" to the result of the litigation

as to encourage forum shopping.  *Hanna v. Plumer*, 380 U.S. 460, 468 (1965).  *See also Schafler*

*v. Fairway Park Condominium Ass'n*, 324 F. Supp. 2d 1302, 1311 (S.D. Fla. 2004)(finding that

since Florida's rule requiring live expert testimony to support an application for attorney's fees

was "only a minor part" of the proceeding, it was not outcome determinative, and therefore,

"merely procedural for *Erie* purposes").

     Given that the Court finds that Defendant's offer of judgment complied with § 768.79

and the substantive portions of Rule 1.442, Plaintiff's claims of invalidity should be rejected.[6]

---

[6]  The Court notes that in *McMahan*, the Eleventh Circuit considered whether the defendant had complied with Rule 1.442 in making its offer of judgment under §768.79.  However, the Court only addressed the *substantive* aspects of Rule 1.442, focusing on plaintiff's claim that the offer was invalid because it was ambiguous.  The Court did not address the defendant's technical compliance with the procedural aspects of Rule 1.442.  *See, generally, Campbell v. Goldman*, 959 So.2d 223, 227 (Fla. 2007)(noting that §768.79 and Rule 1.442 contain both substantive and procedural aspects).

The decision in *Owner-Operator Independent Drivers Ass'n, Inc. v. 4 Points Logistics, LLC,* 2007 WL 2789265 (M.D. Fla. Sept. 24, 2007) is also distinguishable because it addressed Rule 1.442's deadline for a class plaintiff to accept an offer of judgment.  Although finding that provision to be substantive for *Erie* purposes, the court noted that the issue of whether Rule 1.442 is substantive or procedural is an "uncertain question."  *Id.* at *2-3.  *See Saenz v. Campos*, 967 So.2d 1114, 1116 (Fla. Dist. Ct. App. 2007)(noting that §768.79 "provides the substantive law," while Rule 1.442 "provides its procedural mechanism").

In *Morris,* 2005 WL 5544961, the court focused on the substantive content of the offer of judgment and did not address Rule 1.442's certificate of service requirement.  While this Court agrees that there are substantive aspects of Rule 1.442 that are applicable to offers of judgment in diversity cases, this Court finds that the requirement of a certificate of service – which is clearly procedural – is not among them.  Therefore, this Court must respectfully disagree with the court's conclusion that despite being "labeled a rule of civil *procedure*, [Rule 1.442] is substantive law for *Erie* purposes . . ."  *Id.* at * 4 (*emphasis in original*).

**B.  Good Faith**

As an alternative basis for denying Defendant's motion, Plaintiff contends that Defendant's offer of judgment was not made in good faith.

In determining whether an offer was made in good faith, the Court must consider whether the offer bore a "reasonable relationship to the amount of damages suffered and was a realistic assessment of liability." *JES Properties, Inc. v. USA Equestrian, Inc.*, 432 F.Supp.2d 1283, 1294 (M.D. Fla. 2006).  However, the offeror is not required to "possess, at the time he makes the offer, the kind or quantum of evidence needed to support a judgment." *Arnoul v. Busch Entertainment Corp.*, 2008 WL 5341148, *2 (M.D. Fla. Dec. 19, 2008)(*citation omitted*).  Even a minimal offer can still be deemed a good faith offer as long as the evidence demonstrates that, at the time it was made, the offeror had "a reasonable basis to conclude that its exposure was nominal." *JES Properties, Inc.,* 432 F. Supp. 2d at 1294.  "[A]bsent a finding that a party's offer of judgment was not made in good faith, the trial court cannot disallow an entitlement to an award of fees." *Downs v. Coastal Systems Intern., Inc.,* 972 So.2d 258, 261 (Fla. Dist. Ct. App. 2008).  *See also DuPont Builders, Inc. v. Baker*, 987 So.2d 146, 147 (Fla. Dist. Ct. App. 2008)(Section 768.79 mandates an award of attorney's fees to a defendant when there is a rejected offer of judgment and a finding of no liability).  The offeree has the burden of proving that the offer was not made in good faith. *JES Properties, Inc.,* 432 F. Supp. 2d at 1295.

Here, Defendant contends that by June 2008, it had a reasonable basis to believe that there was a "high likelihood" that it would prevail in this lawsuit.  (DE 182 at pages 11-12). Specifically, Defendant states that "[b]ecause of prior inconsistent positions taken by [Plaintiff] in lawsuits against Citizens . . . including repeated assertions that the Citizens policy did in fact

provide per occurrence coverage . . . [Defendant's] assessment of the case was that it had no

merit."  *See* Affidavit of Lawrence O. Kamin, Esq. at ¶ 3, 28 (DE 183).

      Plaintiff has not met its burden of establishing that the offer of judgment was not made in

good faith.  The Court finds that Defendant had a reasonable basis to believe that it would not be

found liable for any of the damages that Plaintiff suffered.  *See Ryan v. Lobo De Gonzalez*, 841

So.2d 510, 522-23 (Fla. Dist. Ct. App. 2003)(even though millions of dollars in damages were

alleged, defendant's $100 offer of judgment was made in good faith because statute of limitations

prevented finding on liability);  *Camejo v. Smith*, 774 So.2d 28, 29 (Fla. Dist. Ct. App.

2000)(where defendant believed liability could not be proven, $100 offer of judgment was made

in good faith).

      First, Defendant states that it spent "almost five months and hundreds of hours analyzing

[Plaintiff's] allegations, reviewing documents, speaking to witnesses, and researching relevant

case law" before determining its likely minimal exposure and calculating its offer.  (DE 209 at

page 7).   Second, Defendant knew that Plaintiff's position in its earlier case against Citizens

directly contradicted the position it assumed in this case and that five separate insurance experts

concluded that the policy contained per occurrence coverage.  Third, Plaintiff extracted a very

favorable settlement from Citizens, thus indicating Citizens' acquiescence that the policy could

very well be interpreted as containing per occurrence coverage.  Finally, Defendant ultimately

prevailed on summary judgment.  In its decision, the District Court concluded that the insurance

policy Defendant procured on Plaintiff's behalf was in accordance with the insurance Plaintiff

sought and since the terms of their contract were satisifed, there was no breach.  Defendant's

success on summary judgment indicates that Defendant was justified in believing that it had

minimal exposure and very limited liability, if any.  *See Morris*, 2005 WL 5544961 at *6

("Although not dispositive, the ultimate outcome of proceedings is certainly a consideration in

determining whether an offer was made in good faith.")(*citation omitted*).  *See also McMahan v.*

*Toto*, 311 F.3d 1077, 1083-84 (11th Cir. 2002)(Court rejected claim that offer was not made in

good faith, noting that such "ignores the inconvenient fact that [defendant] did prevail against

[plaintiffs] . . .[t]o accept in the same case in which a party did prevail the notion that there was

no reasonable basis for that party prevailing would require self-contradiction on a scale that we

are unwilling to consider");  *Downs,* 972 So.2d at 262 (where defendants prevailed on summary

judgment, court found they had a reasonable basis for believing their liability was limited).

The Court is mindful that "the purpose of § 768.79 is to encourage settlement of lawsuits,

and '[a]n award of fees under the statute is a sanction against a party who refuses to accept a

reasonable offer and unnecessarily continues the litigation.'"  *New York Life Ins. Co. v.*

*Waxenberg*, 2009 WL 632896, *4 (M.D. Fla. March 11, 2009)(*quoting Attorneys' Title Ins.*

*Fund, Inc. v. Gorka*, 989 So.2d 1210, 1213 (Fla. Dist. Ct. App. 2008)).  When a plaintiff rejects

what ultimately turns out to have been a "very reasonable offer of judgment," as occurred here,

"the rejection of that offer of judgment necessarily multiplied the litigation."  *New York Life Ins.*

*Co.*, 2009 WL 632896, *4.  Accordingly, and based on the foregoing, the Court finds that

Defendant is entitled to an award of reasonable attorneys' fees and costs.

**3.  Determining the Relevant Time Period**

The parties dispute the relevant time period for calculating the attorneys' fees to be

awarded.  Plaintiff alleges that the relevant time period is from September 1, 2008 (when it

effectively rejected Defendant's offer of judgment) through March 3, 2009 (the date final

judgment was entered).  Defendant contends that the relevant time period starts on June 26, 2008

(when it served its offer of judgment) and runs through the litigation of the instant motion.

The case law is clear that a prevailing party is entitled to recover their attorney's fees

going back to the date the offer of judgment was served.  *See Baker v. Miami-Dade County*,

2006 WL 566720, *1 (S.D. Fla. March 1, 2006)(under § 768.79 defendant is entitled to

attorney's fees "from the date of the offer");  *Walker v. Bozeman*, 243 F. Supp. 2d 1298, 1303

(N.D. Fla. 2003)(same).  *See also* Fla. Stat. § 768.79(6)(a) (defendant is entitled to reasonable

attorney's fees and costs "incurred from the date the offer was served").

The law in Florida is equally clear that although a party cannot recover fees generated in

litigating the *amount* of attorney's fees to be awarded, a party can recover fees generated in

litigating their *entitlement* to attorneys' fees under §768.79.  *Steffen v. Akerman, Senterfitt &*

*Edison, P.A.*, 2009 WL 1117390, *1 (M.D. Fla. April 24, 2009)(fee award "extends to fees

generated in litigating the entitlement to attorneys' fees . . . [but] the statute [§768.79] is

inapplicable to fees generated in litigating the amount of attorneys' fees to which one is

entitled")(*citing McMahan v. Toto*, 311 F.3d 1077, 1085-86 (11th Cir. 2002)(noting that unlike

federal court practice which allows recovery of attorney's fees for litigating both entitlement and

amount issues, the Florida Supreme Court has limited recovery to entitlement issues only,

distinguishing the different statutory purposes)(*citing State Farm Fire & Cas. Co. v. Palma*, 629

So.2d 830, 833 (Fla. 1993))).

Here, defense counsel has provided billing records for the period between June 27, 2008

through February 28, 2009.  *See* Exhibits 3-11.  Although Defendant has indicated its intention to

"supplement this motion to reflect the fees and costs it incurred after February 28, 2009 . . . when

additional billing statements become available" (*see* Kamin Aff. at ¶ 36)(DE 183), more than

seven months have passed and no additional billing records have been provided to the Court.

Therefore, even though the case law supports Defendant's recovery of reasonable attorneys' fees

incurred as a result of litigating its entitlement to attorneys' fees, this Court is limited to the

evidence before it and thus, can only recommend that Defendant be awarded its reasonable

attorneys' fees incurred from June 26, 2008 through February 28, 2009.

## 4.  Calculation of the Attorney's Fee Award

In federal court, a reasonable attorney's fee award is "properly calculated by multiplying

the number of hours reasonably expended times a reasonable hourly rate." *American Civil*

*Liberties Union v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (*citing Blum v. Stenson*, 465 U.S.

886, 888 (1994)).  The reasonable hourly rate is defined as the "prevailing market rate in the

relevant legal community for similar services by lawyers of reasonably comparable skills,

experience, and reputation." *Barnes*, 168 F.3d at 436 (*quoting Norman v. Housing Auth. of*

*Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1999)).  The fee applicant bears the burden of

establishing the claimed market rate.  *See Barnes*, 168 F.3d at 427.  In assessing the number of

hours billed, the Court should exclude hours that were not "reasonably expended," in other

words, hours "that would be unreasonable to bill to a client and therefore to one's adversary

irrespective of the skill, reputation or experience of counsel." *See Barnes*, 168 F.3d at 428

(*quoting Norman*, 836 F.2d at 1301).  Once this "lodestar" amount is calculated, the Court has

the discretion of adjusting it up or down depending on the results obtained.  *See Barnes*, 168 F.3d

at 427 (*citing Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)).

Florida's statute, § 768.79(7)(b), also states that "the court shall consider, along with all

other relevant criteria, the following additional factors" in determining the reasonable amount of

an attorney's fee award:

> 1. The then apparent merit or lack of merit in the claim.
> 2. The number and nature of offers made by the parties.
> 3. The closeness of questions of fact and law at issue.
> 4. Whether the person making the offer had unreasonably refused to furnish
> information necessary to evaluate the reasonableness of such offer.
> 5. Whether the suit was in the nature of a test case presenting questions of
> far-reaching importance affecting non-parties.
> 6. The amount of the additional delay cost and expense that the person making the
> offer reasonably would be expected to incur if the litigation should be prolonged.

Fla. Stat. § 768.79(7)(b).  *See Strait v. Busch Entertainment Corp.*, 2007 WL 788919, 81 (M.D.

Fla. March 14, 2007)(court noted that it "must consider" §768.79 factors in determining

reasonableness of attorney's fee award).[7]

As to the type of evidence that the fee claimant should produce in support of a fee claim,

in *Barnes*, the Eleventh Circuit stated,

> The "fee applicant bears the burden of establishing entitlement and
> documenting the appropriate hours and hourly rates." *Norman*, 836
> F.2d at 1303.  That burden includes "supplying the court with
> specific and detailed evidence from which the court can determine
> the reasonable hourly rate. Further, fee counsel should have
> maintained records to show the time spent on the different claims,
> and the general subject matter of the time expenditures ought to be
> set out with sufficient particularity so that the district court can
> assess the time claimed for each activity . . . A well-prepared fee

---

[7]  One court has noted that it "perhaps could be debated whether federal or Florida law governs determination of the amount of fees to be awarded under the Florida offer of settlement statute in a diversity case litigated in federal court.  But the result would be the same either way. The Florida courts have adopted the federal lodestar approach . . . [and] consider [factors] in setting a lodestar that are essentially the same as those considered by federal courts.  Section 768.79(7)(b), Florida Statutes, lists factors for consideration that do not substantively change the analysis." *Watson v. Wal-Mart Stores, Inc.*, 2005 WL 1266686, n.4 (N.D. Fla. May 25, 2005)(*internal quotations and citations omitted*).

> petition also would include a summary, grouping the time entries
> by the nature of the activity or stage of the case." *Id.* (*citations
> omitted*).

168 F.3d at 427.

In submitting a request for attorney's fees, fee applicants are required to exercise "billing

judgment." *Barnes*, 168 F.3d at 428 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

If fee applicants do not exercise billing judgment by excluding "excessive, redundant, or

otherwise unnecessary" hours, which are hours "that would be unreasonable to bill to a client and

therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*," the

court must exercise billing judgment for them. *See Barnes*, 168 F.3d at 428 (*quoting Norman*,

836 F.2d at 1301 (*emphasis in original*)).

### A.  Hourly Rates

The hourly rates charged by defense counsel in this case are fiercely contested.  The

dispute stems from Defendant's retention of a New York City law firm, Willkie Farr &

Gallagher, LLP ("Willkie Farr"), which assigned ten different attorneys to work on the case at

hourly rates ranging between $275.00 and $995.00.  *See* Kamin Aff. at ¶ 87-96 (DE 183).

Defendant contends that because Plaintiff initiated this lawsuit in the Southern District of New

York, where the case was litigated for nearly five months before it was transferred to this

District, Defendant was entitled to continue using its New York City attorneys, who had already

invested significant time in the case.

Plaintiff defends its decision to file this lawsuit in the Southern District of New York.

According to Plaintiff,

> [t]he litigation was filed in New York because that was the venue
> in which Marsh's parent company is headquartered and, further,

> many of [Plaintiff's] witnesses do not reside full time in Florida
> but rather are from the East Coast, including several who live in
> New York, Boston, and New Jersey.  Thus, it was the most
> convenient forum not only for Marsh, but also for [Plaintiff's] key
> witnesses as well.

(DE 200 at page 5).  Plaintiff initially objected when Defendant filed a motion to transfer the case

to the Southern District of Florida, but Plaintiff ultimately stipulated to the transfer.  The case

was transferred to this District on March 11, 2008.[8]

It is well settled that a reasonable hourly rate is determined by "the prevailing market rate

in the relevant legal community for similar services by lawyers of reasonably comparable skills,

experience, and reputation." *Barnes*, 168 F.3d at 437 (*quoting Norman*, 836 F.2d at 1299).

Generally, "the 'relevant market' for purposes of determining the reasonable hourly rate for an

attorney's services is 'the place where the case is filed.'" *Barnes*, 168 F.3d at 437 (*citing Cullens

v. Georgia Dep't. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)).

Here, Plaintiff filed this lawsuit in the Southern District of New York, where attorneys

charge hourly rates that are among some of the highest in the country.  Having chosen to initiate

this lawsuit in New York, where Defendant had a "longstanding professional relationship"

spanning "several decades" with Willkie Farr (*see* Kamin Aff. at ¶ 84, 101), Plaintiff cannot now

object to Defendant's application for reimbursement of attorney's fees at New York City rates.

Rather, the Court finds that it was reasonable for Defendant to maintain Willkie Farr's

---

[8] Defendant contends that Florida was the appropriate venue for this case from the outset
because "[t]his dispute was between a Florida insurance broker and its Florida client concerning
a wind damage policy placed in Florida with a Florida insurance company covering a building
located in Florida.  Almost all of the material witnesses resided in Florida, including the Marsh
brokers who placed the Citizens policy.  Florida is the place where the policy was negotiated,
procured and issued . . . where the property damage took place, and where the alleged
misconduct occurred."  *See* Kamin Aff. at ¶ 20 (DE 183).

representation after the case was transferred to Florida, given the amount of time and work the firm had already invested.  Therefore, Defendant is entitled to recover reasonable attorneys' fees based on New York City rates.  That said, the Court finds the hourly rates sought by Willkie Farr to be on the high end of the range of attorney's fees charged by large firms in New York City.[9]

It is well settled that the "fee applicant bears the burden of establishing the reasonableness of the hourly rates requested – in particular, by producing satisfactory evidence that the requested rates are in line with those prevailing in the community."  *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F.Supp.2d 307, 315 (S.D.N.Y. 2009)(*citing Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)).  Typically, a fee applicant provides an expert affidavit to support the reasonableness of the hourly rates sought.  *See Ace Ltd. v. Cigna Corp.,* 2001 WL 1286247, *5 (S.D.N.Y. Oct.22, 2001)(evidence "should include affidavits from attorneys with similar qualifications stating the precise fees typically charged and paid, during the relevant time period, in the relevant market") (*citation omitted*);  *Altman v. Port Auth.*, 879 F.Supp. 345, 353 (S.D.N.Y.1995)(fee applicant "submitted affidavits from three attorneys with substantial experience" who attested to appropriateness of the requested hourly rates).  Here, in support of the fee application, Defendant offers an expert affidavit by Gerald F. Richman, Esq., a litigator in South Florida.  Mr. Richman does not offer any opinion as to the reasonableness of the New

---

[9]  The Court has reviewed the National Law Journal's 2008 survey which gives a sampling of billing rates at law firms across the country.  The range for hourly rates of partners in large New York City law firms was between $350 and $895, and the range for associates was between $175 and $650.  *See A Nationwide Sampling of Law Firm Billing Rates*, Nat'l L.J., Dec. 8, 2008.  The Court notes that one firm, White & Case, listed substantially higher billing rates than any other New York City firm (partners ranging from $550 to $1260 and associates from $160 to $920), but since these rates are the highest in the country, the Court will not include them in its analysis.  *See Law Firm Fees Defy Gravity,* Nat'l L.J., Dec. 8, 2008.

York rates sought, nor does it appear that he would he be qualified to do so.  Instead, Mr. Richman opines only as to reasonable hourly rates if South Florida were used as the relevant market, which it is not.  *See* Richman Aff. at ¶ 22 (DE 184).  Notably, Defendant does not offer an expert opinion, or any other evidence, to establish that Willkie Farr's billing rates are within the prevailing market rates for comparable attorneys in New York City.  *See Ace Ltd.,* 2001 WL 1286247 at *6 (fee applicant "did not specify the range of rates currently charged by other large New York firms for attorneys of varying levels of experience" did not provide "any other data, such as articles or surveys addressing current legal rates for commercial litigators at large law firms in New York" nor did fee applicant "cite[] to any previous decision in this district in which such high rates for paraprofessionals, junior and senior associates, and partners were awarded in the area of commercial litigation").

It is well settled that a fee applicant's failure to provide evidence supporting the requested rates is sufficient justification for reducing the requested fee award.  *See Ace Ltd.,* 2001 WL 1286247at *6 (*citing Helicopter Corp. of America v. City of New York*, 1999 WL 562031, *6-7 (S.D.N.Y. July 30, 1999)(reducing fee request, in part, because the court considered counsel's submissions in support of its rates inadequate and was unwilling to conclude that the rates were reasonable without further evidentiary support).

Based on the absence of supporting evidence to establish the prevailing market rates in the Southern District of New York, the Court must use alternate means to determine "what a reasonable, paying client would be willing to pay," bearing in mind "*all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees,"

including the *Johnson* factors.[10]  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184, 190 (2d Cir. 2008)(court must "step[] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively")(*emphasis in original*).  In addition, the Court may consider prior hourly rates awarded to other attorneys of similar experience in the community and also the Court's own knowledge of the rates charged by local practitioners.  *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96-97 (2d Cir. 2006)("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate.").  *See also Moreno v. Empire City Subway Co.*, 2008 WL 793605, *7 (S.D.N.Y. March 26, 2008)(where fee applicant "has submitted no evidence of the prevailing market rate for attorneys of like skill . . . it is within [the court's] discretion to determine the reasonable hourly rate . . . based on [the court's] familiarity with [the] case and the prevailing rates in the Southern District").

Here, unfortunately, Defendant has not advised the Court of hourly rates its attorneys have previously been awarded by courts in the Southern District, nor has counsel presented evidence of what other attorneys in large firms are paid for this type of work.  *See Reiter v. Metropolitan Transp. Authority of State of New York*, 2007 WL 2775144, *8 (S.D.N.Y. Sept. 25,

---

[10]  The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *See Arbor Hill*, 522 F.3d at 186 n. 3 (*citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

2007)(court's task of determining reasonable hourly rate was made "particularly difficult" because attorney did not submit evidence regarding the amount charged by other attorneys with his level of experience).  Thus, this Court must rely largely on recent case law from the Southern District of New York as well as the *Johnson* factors to determine counsel's reasonable hourly rates.

Defense counsel addressed several of the *Johnson* factors in the motion for attorneys' fees.  Specifically, counsel offered a detailed explanation of the time and labor involved in defending the case (*see* Kamin Aff. at ¶ 41-78), provided information regarding each attorney's experience and skill level (*see* Kamin Aff. at ¶ 87-96), explained the duration and nature of the firm's relationship with Marsh, and stated that the rates charged in this case were the attorneys' customary hourly rates, less a twenty-one percent (21%) fee reduction based on the firm's "longstanding arrangement with Marsh."  *See* Kamin Aff. at ¶ 101-103 (DE 183).  In addition, the Court is aware of the substantial damages sought by Plaintiff and the excellent results obtained by defense counsel for their client.  The Court will be mindful of these factors in deciding the reasonable hourly rates.

As noted above, the Court has reviewed a recent survey regarding billings rates charged by large New York City firms.  However, "courts have acknowledged that a judicial determination of what is 'reasonable' for purposes of a fee award to be paid by the losing party to the prevailing party in a litigation is not the same as the reasonableness of a bill that a law firm might present to its own paying client."  *Daiwa Special Asset Corp. v. Desnick*, 2002 WL 31767817, *2 (S.D.N.Y. Dec. 3, 2002).  *See also Daggett v. Kimmelman*, 811 F.2d 793, 799 (3d Cir. 1987)(there "comes a point where a lawyer's historic rate, which private clients are willing

to pay, cannot be imposed on his or her adversaries"); *Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986)(a reasonable fee is "different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region").

For example, in *Pugach v. M & T Mortg. Corp.*, 564 F. Supp. 2d 153, 157 (E.D.N.Y. 2008), attorneys for a large New York City firm claimed to charge the following hourly rates to their clients: $725 for a partner with 30 years of experience, $640 for a partner with 18 years experience in complex litigation, and $330 for a first year associate.  In support of their rates, the firm relied on a survey by the National Law Journal which provided 2006 billing rates at large New York City firms.  The survey showed partners' hourly rates ranged from $250 to $800 and associates ranged from $160 to $550 per hour.  *Id.*  Based on the survey, the court noted that the firm's rates were "not unheard of," but that they were "somewhat higher than rates typically used by other courts for purposes of fee awards, even in cases involving complex litigation and where parties are represented by large or specialty New York-based law firms."  *Pugach*, 564 F. Supp. 2d at 157 (*citing Ass'n of Holocaust Victims for Restitution of Artwork and Masterpieces v. Bank Austria Creditanstalt AG,* 2005 WL 3099592, *5 (S.D.N.Y. Nov. 17, 2005)(approving rates of $350 per hour for partners and $225 per hour for junior associates at Strook & Strook & Lavan for work in connection with dismissal of a $6.8 billion lawsuit);  *Auscape Int'l v. Nat'l Geographic Soc.*, 2003 WL 21976400, at *5 (S.D.N.Y. Aug. 19, 2003)(approving rates ranging from $215 to $495 per hour for attorneys at Latham & Watkins LLP for purposes of a sanctions award);  *Weil v. Long Island Sav. Bank*, 188 F.Supp.2d 265, 269 (E.D.N.Y. 2002)(approving rates ranging from $370 to $450 per hour for partner at Hogan & Hartson in a consumer class action)).

Recent cases from the Southern District of New York are also instructive as to hourly rates typically awarded.  In a very recent breach of contract case, a court in the Southern District of New York found that hourly rates for six attorneys ranging from $328.00 to $440.00 were reasonable.  *See VFS Financing, Inc. v. Pioneer Aviation, LLC*, 2009 WL 2447751, *4 (S.D.N.Y. Aug. 11, 2009).  In addition, another recent case out of that District determined that $300 is a reasonable rate for a New York City firm associate with "several years" of commercial litigation experience and that rates ranging between $425 and $525 are reasonable rates for New York City firm partners with "extensive experience in commercial litigation."  *Verizon Directories Corp. v. AMCAR Transp. Corp*., 2008 WL 4891244 at *5 (S.D.N.Y. Nov. 12, 2008).

Here, even assuming that the rates sought by Willkie Farr are within the accepted range charged by New York City firms, the Court finds that the central issue in this lawsuit – whether the insurance policy provided aggregate or per occurrence coverage – was not so complicated to justify the high fees sought.  *See Pugach*, 564 F. Supp. 2d at 158-59 ("[e]ven assuming that the rates sought by defendant are within the range for comparable awards in other cases" court found rates to be "somewhat excessive" for the type of work performed; because central issue "was neither novel nor complex" court found case did not "justify rates at the highest end of the spectrum").  *See also Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008)(in light of the "relatively straightforward nature" of the case, court reduced fees sought to $600/hour for partners, $350/hour for senior associates, and $250 for junior associates).  Accordingly, the Court will reduce the hourly rates sought.

Based on the experience and educational backgrounds of the attorneys assigned to this

case,[11] the Court finds the following hourly rates to be reasonable for purposes of awarding

attorneys' fees to a prevailing party in the Southern District of New York:

| Attorney | Charged Hourly Rate[12] | Reduced by 21%[13] | Reasonable Rate |
|---|---|---|---|
| Lawrence O. Kamin: | $895 - $950 | $707 - $750 | $675 |
| Gregory K. Conway: | $645 - $685 | $510 - $541 | $500 |
| Samuel Leaf: | $640 - $685 | $506 - $541 | $500 |
| Sameer Advani: | $590 - $665 | $466 - $525 | $400 |
| Katharine N. Monin: | $440 - $510 | $348 - $403 | $350 |
| Rina R. Vazirani: | $360 - $465 | $284 - $367 | $275 |
| Kate Dyson: | $290 - $380 | $229 - $300 | $225 |

With regard to the number of attorneys Willkie Farr assigned to the case, the Court finds

that the case was overstaffed.  As noted above, this case was not so complex to require the

services of three partners, four senior associates and three junior associates.  Given that two of

the partners assigned to the case, Mr. Auslander and Mr. St. Jeanos, spent relatively little time on

it (approximately 20 hour and 78 hours, respectively), the Court will deduct their hours from the

time billed.  *See ACE Ltd.,* 2001 WL 1286247 at *5 (where case was "overstaffed" by "numerous

attorneys and paraprofessionals," court took such factors into consideration and reduced the fee

requested accordingly)(*citing General Elec. Co. v. Compagnie Euralair, S.A.,*1997 WL 397627,

*4-5 (S.D.N.Y. July 3, 1997)(where nine attorneys and many support staff were assigned to case,

court found reduction in the fees appropriate due to "overstaffing").  Additionally, the Court

---

[11]  As will be discussed in greater detail below, Willkie Farr assigned ten attorneys to this case.  The Court finds the case was overstaffed and deducted time spent by three attorneys.

[12]  The range for each attorney's charged hourly rates reflects an increase in billing rates at the end of the 2008 fiscal year.

[13]  The 21% reduction is one that Willkie Farr routinely extends to Defendant, its longtime client.  *See* Kamin Aff. at ¶ 103.

finds that many of the billing entries by a senior associate, Russell D. Morris, Esq., are either unacceptably vague or so heavily redacted that the Court cannot discern the legal services provided.  Accordingly, the Court will deduct his time as well.  *See Intercontinental Hotels Group, Inc. v. Weis Builders, Inc.*, 2007 WL 4072979, *2 (N.D. Ga. Nov. 5, 2007)(court "cannot perform its analysis adequately unless each entry also states with specificity the task performed"); *Vitug v. Multistate Tax Com'n*, 883 F.Supp. 215, 223-24 (N.D. Ill. 1995)(redacted description of services made it impossible for court to sufficiently evaluate services and fees charged).  *See also Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 2005 WL 927179, *6 (C.D. Cal. Jan. 18, 2005)(court deducted fees where the description of services performed had been redacted and not even a general subject matter for the charges was identified).

### B.  Number of Hours Reasonably Expended

Defense counsel's billing records for the period between June 27, 2008 and February 28, 2009 are attached to Defendant's motion as Exhibits 3-11.[14]  According to Willkie Farr, the firm billed 7,348.5 hours during those eight months.  Defendant's motion delineates the extensive legal work performed during this period including a great deal of motion practice, voluminous discovery, nearly two dozen depositions, and pre-trial preparation.

In its response to the motion, Plaintiff failed to lodge specific objections to defense counsels' billing records.  Such failure is generally deemed fatal.  *See Barnes*, 168 F.3d at 427 (stating that fee opponents are required to be specific and "reasonably precise" with respect to

_____

[14]  Defendant has indicated its intention to "supplement this motion to reflect the fees and costs it incurred after February 28, 2009 . . . when additional billing statements become available" (*see* Kamin Aff. at ¶ 36), however, it is now seven months later and no additional billing records have been provided to the Court.

any objections they may have); *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387, 1389

(11th Cir. 1997)(affirming decision of district court as to the claimed number of hours worked

because fee opponents failed to lodge specific objections); *Scelta v. Delicatessan Support Srvcs.*

*Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002)("[a] fee opponent's failure to explain exactly

which hours he views as unnecessary or duplicative is generally viewed as fatal.") (*citing Gray*,

125 F.3d 1387).

      The Court has reviewed the attorneys' billing entries and, in light of Plaintiff's failure to

make specific objections, the Court fully credits those entries that provide the requisite level of

specificity.  However, to the extent counsel's entries lack the requisite specificity, the Court has

deducted such time.[15]

      Based on the Court's review of Willkie Farr's billing records and applying the necessary

reductions of time, the Court concludes that the following list represents the reasonable time

spent on this case:

| | |
|---|---|
| Lawrence O. Kamin: | 322.8 hours |
| Gregory K. Conway: | 897.7 hours |
| Samuel Leaf: | 411.5 hours |
| Sameer Advani: | 606.2 hours |
| Katharine N. Monin: | 1,044.8 hours |
| Rina R. Vazirani: | 531.0 hours |
| Kate Dyson: | 661.9 hours |
| Total Hours: | 4,475.9 |

---

[15] For example, there are several entries which indicate the attorney spent time at meetings, on phone calls or reviewing correspondence without any notation as to the particular subject matter involved.  Such entries are inadequate for the Court to perform a proper assessment of the time spent and must be deducted.  *See Intercontinental Hotels Group, Inc.*, 2007 WL 4072979 at *2 (each entry must state with specificity the task performed).  For the reasons stated above, the Court also rejects any entries that are completely redacted.  *See Cambridge Electronics Corp*, 2005 WL 927179 at *6; *Vitug*, 883 F.Supp. at 223-24.

These hours reflect the fact that a client can recover for time spent by multiple attorneys on a case, so long as the attorneys' efforts are not unreasonably duplicative. *See Barnes*, 168 F.3d at 432 ("[a]n award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation")(*quoting Johnson v. University College of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983)); *Norman*, 836 F.2d at 1301-1302 (observing that multiple attorneys may be compensated for their work on a case "if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer")(*citing Johnson*, *supra*).

Given this Court's assessment as to the reasonable hourly rates and time spent, the Court recommends the following calculation of attorneys' fees:

| Attorney | Hours | X | Hourly Rate | = | Total |
|----------|-------|---|-------------|---|-------|
| Lawrence O. Kamin: | 322.8 | | $675.00 | | $217,890.00 |
| Gregory K. Conway: | 897.7 | | $500.00 | | $448,850.00 |
| Samuel Leaf: | 411.5 | | $500.00 | | $205,750.00 |
| Sameer Advani: | 606.2 | | $400.00 | | $242,480.00 |
| Katharine N. Monin: | 1,044.8 | | $350.00 | | $365,680.00 |
| Rina R. Vazirani: | 531.0 | | $275.00 | | $146,025.00 |
| Kate Dyson: | 661.9 | | $225.00 | | $148,927.50 |
| | | | | | $1,775,602.50 [16] |

---

[16] The Court has also considered the factors for determining a reasonable fee as set forth in §768.79(7)(b) and finds that this was not a "close case." Even early on, Plaintiff should have realized that its lawsuit against Defendant lacked merit, particularly in light of the multiple expert opinions Plaintiff obtained that supported Defendant's position. Additionally, Plaintiff should have been aware of the substantial attorneys' fees Defendant would incur if the case progressed (given that Plaintiff's choice of venue would incur New York City rates), and that Plaintiff might be held responsible for such fees if it declined the offer. Based on these facts, Plaintiff's rejection of Defendant's offer was unreasonable and an award in the amount as reduced by the Court is appropriate. *See Central Motor Co. v. Shaw*, 3 So.3d 367, n.3 (Fla. Dist. Ct. App. 2009)(although reasonableness of rejecting an offer has no bearing on *entitlement* to fees, §768.79(7)(b)'s factors are relevant to the *amount* of fees awarded).

### C.  Defendant's Request for Paralegal Fees

As part of the attorney's fee award, Defendant seeks to be compensated for nearly 2,000 hours spent by a variety of "legal assistants and staff members" who worked on the case at hourly rates ranging between $100.00 and $300.00.  *See* Kamin Aff. at ¶ 97.  However, Defendant's motion does not provide any information regarding the legal experience of any of these employees so as to enable the Court to assess the reasonableness of their claimed hourly rates. *See U.S. ex rel. ATC Distribution Group, Inc. v. Ready-Built Transmissions, Inc.*, 2007 WL 2522638, *3 (S.D.N.Y. Sept. 7, 2007)("[w]here the moving party fails to disclose any information regarding the professionals performing those services . . . including whether they are attorneys or paralegals, partners or associates . . . [and] their relative experience levels" courts have denied applications for fees)(*citation omitted*).  *See also Recio v. Clark County School Dist.*, 2006 WL 3149363, *1 (D. Nev. Oct. 31, 2006)(court denied an award of paralegal fees where party failed to establish that he was qualified to be compensated as a paralegal).  Therefore, Defendant's request for reimbursement of these expenses should be denied on this basis alone.

In any event, "such fees are only recoverable to the extent they reflect tasks traditionally performed by an attorney and for which the attorney would customarily charge the client."  *Hyatt v. Barnhart*, 315 F.3d 239, 255 (4th Cir. 2002).  "Otherwise, paralegal expenses are separately unrecoverable overhead expenses."  *Allen*, 665 F.2d at 697.

Here, the Court finds a substantial portion of the time billed by the assorted other employees who worked on this case was duplicative of work performed or reviewed by the attorneys.  Moreover, to the extent the work is not duplicative of the attorneys' work, it is largely clerical in nature.  *See Inman v. Apfel*, 2000 WL 1221858, *2 (M.D. Fla. Jul. 14, 2000)("tasks of

a clerical nature are not compensable as attorney's fees"); *For Play Limited v. Bow to Stern*

*Maintenance, Inc.*, 2006 WL 3662339, *7 (S.D. Fla. Nov. 6, 2006)(noting that courts deny

compensation for "paralegals performing clerical functions such as organizing files, copying

documents, checking the docket, updating files, checking court dates and delivering papers").

## 5.  Litigation Expenses and Costs

Defendant also seeks to recover $169,287.01 in costs including deposition expenses,

witness fees, photocopies, and service of process.  (DE 182 at page 18).  Plaintiff does not object

to any of Defendant's costs, nevertheless, Rule 54(d) "does not bestow on a court limitless

discretion to 'tax costs to reimburse the litigant for every expense he has seen fit to incur in the

conduct of his case.'"  *Grady v. Bunzl Packaging Supply Co.,* 161 F.R.D. 477, 478 (N.D. Ga.

1995)(*quoting Farmer v. Arabian Am. Oil Co.,* 379 U.S. 227, 235 (1964)).  The Court may only

tax costs as authorized by statute.  *See EEOC v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir.

2000)(*citing Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987)).

 "Section 1920 enumerates expenses that a federal court may tax as a cost under the

discretionary authority found in Rule 54(d)."  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482

U.S. 437, 441-442 (1987).  This section provides in part,

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

### A.  Deposition Costs

According to Defendant, it incurred $85,016.81 in deposition expenses, including stenographer fees, transcripts and videotape costs.  The Court has reviewed the invoices submitted by Defendant and notes that nearly all of the depositions were both videotaped and recorded stenographically.  *See* Defendant's Exhibit 18.  Defendant seeks reimbursement for both types of recordings, and also seeks to recover for expedited transcripts, mini-transcripts, disc copies, shipping costs and other "litigation package" services provided by the stenographer.

The Court must deny a significant portion of Defendant's deposition expenses.  First, where a party seeks reimbursement for two methods of recording a deposition, the party bears the burden of proving that both methods were necessary.  *See Utopia Provider Systems, Inc. v. Pro-Med Clinical Systems, L.L.C.*, 2009 WL 1210998, *3 (S.D. Fla. May 1, 2009)(duplicative video deposition costs were denied where prevailing party failed to explain why it was necessary to obtain both a videotaped and transcribed copy of depositions);  *Ferguson v. Bombardier Services Corp.*, 2007 WL 601921, *3-4 (M.D. Fla. Feb. 21, 2007)(same).  Here, Defendant offers no explanation as to why both stenographically transcribed *and* videotaped copies of the depositions were necessary.  Therefore, the cost for video depositions should be denied.

Similarly, Defendant must demonstrate the necessity for condensed and electronic drafts of transcripts as well as other extra services provided by the stenographer, otherwise the Court will find that such are merely for the convenience of counsel and thus, not taxable.  *See American Cas. Co. of Reading, Pennsylvania v. Health Care Indem., Inc.*, 2009 WL 1456429, *2 (M.D. Fla. May 22, 2009)(applying revised language of §1920(2) and denying reimbursement for

mini-transcripts, ASCII disks, and postage and delivery charges of the court reporter);  *Suarez v. Tremont Towing, Inc.*, 2008 WL 2955123, *3 (S.D. Fla. Aug. 1, 2008)(court did not allow reimbursement for delivery charges or charges for exhibits, finding such were not taxable costs).

Finally, Defendant offers no explanation for incurring the additional expenses of expedited service. *See Davis v. Sailormen, Inc.*, 2007 WL 1752465, *4 (M.D. Fla. June 15, 2007)(court declined to award expedited rate where parties had nearly ten months to conduct discovery and court found "no indication . . . that discovery was delayed by circumstances beyond the control" of defendant)(*citing Nat'l Bancard Corp. v. VISA, U.S.A., Inc.*, 112 F.R.D. 62, 64 (S.D. Fla. 1986) (holding that "the expedited nature of the transcript was for the convenience of counsel and therefore the additional expense is not taxable.")).

Accordingly, the expedited rates should be denied and the stenographer's rate for transcription services should be reduced to $4.02 per page, which has been established as the maximum per page rate for a regular transcript.  *See* Clerk's Office Fee Schedule for the Southern District of Florida at http://www.flsd.uscourts.gov.  *See also Correa v. Illinois Dept. of Corrections*, 2008 WL 299078, *2 (N.D. Ill. Jan. 29, 2008)(court used rates established by Judicial Conference to consider reasonableness of deposition transcription costs).[17]

Based on the foregoing, Defendant is entitled to recover $24,552.74 in deposition costs.

**B.  Expert Witness Fees**

Defendant seeks reimbursement of $77,096.50 in fees charged by its three expert witnesses for giving depositions, preparing their expert reports and travel expenses.  *See*

---

[17]  To the extent certain invoices only provide a total cost for the transcript and do not disclose the number of pages transcribed or the stenographer's rate per page, the Court declines to award those expenses.

Defendant's Exhibits 19-21.

Section 1920(6) clearly states that only costs for court appointed experts may be taxed. *Rosa v. City of Fort Myers*, 2008 WL 1776458, *2 (M.D. Fla. April 18, 2008)("non-court appointed expert fees are not taxable").  Moreover, 28 U.S.C. § 1821(b) states that a witness attending a deposition shall be paid a $40.00 attendance fee per day.  "This $40.00 is a maximum amount per witness, *including expert witnesses.*"  *Rosa*, 2008 WL 1776458 at *2 (*emphasis added*).  Accordingly, the Court finds that reimbursement for Defendant's expert witness fees should be reduced to $40.00 per day.  *See  Morrison v. Reichhold Chems., Inc.*, 97 F.3d 460, 463 (11th Cir. 1996)(district court erred in taxing expert witness fee in excess of $40 per day).  *See also James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 651 (S.D. Fla. 2007)(court limited recovery of witness fees to $40 per day).  Since each of Defendant's three expert witnesses expended three days for testimony and travel, Defendant is entitled to reimbursement of $360.00 in witness fees.  *See Prison Legal News v. Crosby*, 2005 WL 2372170, *4 (M.D. Fla. Sept. 27, 2005)(court permitted expert witness fees for one day of testimony and two days of travel).

With regard to the travel expenses sought, § 1821 states that testifying witnesses are entitled to recover costs of airfare by a "common carrier at the most economical rate reasonably available," as well as a daily subsistence rate when overnight travel is required.  28 U.S.C. §1821(c)(1), (d).  The subsistence rates are determined by the General Services Administration (GSA) depending upon the locale.

Here, Defendant's expert, Scott Stein, provided receipts for his travel showing airfare of $364.00 for travel from Fort Lauderdale to New York City, two nights at a hotel in New York for $319.00 per night (plus taxes), meals totaling $241.90 and airport parking for $45.00.  The Court

finds Mr. Stein's airfare to be "the most economical rate reasonably available" and that because

the statute also provides for parking expenses, these costs are reimbursable.  However, according

to GSA's website, the subsistence rate for New York City in October 2008 (when Mr. Stein

traveled there) was $311.00 per night for lodging (excluding taxes) and $64.00 for meals and

incidental expenses, with a maximum per diem rate of $375.  *See* http://www.gsa.gov.[18]  Based

on the maximum allowable subsistence rates, the Court finds Defendant is entitled to recover

$1,283.34 for Mr. Stein's travel expenses.  *See Horton Homes, Inc. v. United States*, 2004 WL

1719354, *3-4 (M.D. Ga. June 10, 2004)(court permitted recovery of expert's expenses for

reasonable air travel as well as well as the city's subsistence rate for lodging and food).

   However, Defendant has failed to provide receipts for the travel expenses incurred by

Craig Stanovich and Jeffrey Stempel, as required by the statute.  Moreover, Mr. Stanovich's

invoice indicates that he paid over $1,000.00 to fly from Boston to Washington, D.C.  Such does

not appear to be "the most economical rate reasonably available."  Accordingly, Defendant is not

entitled to recover for these costs.  *See For Play Limited v. Bow to Stern Maintenance, Inc.*, 2006

WL 3662339, *13 (S.D. Fla. Nov. 6, 2006)(court denied reimbursement where witness failed to

provide any evidence to support travel costs); *Ferguson v. Bombardier Services Corp.*, 2007 WL

601921, *5 (M.D. Fla. Feb. 21, 2007)(where witness failed to submit any receipts for common

carrier travel, hotel, parking, or taxi, as required by 28 U.S.C. § 1821(c)(1)-(3), (d), court found

the costs were "not properly taxed").

   Based on the foregoing, Defendant is entitled to recover a total of $1,643.34 in witness

fees and travel expenses.

---

[18]  For travel days, GSA allows only $48.00 for meals and incidental expenses.

### C.  Photocopying Costs

Defendant seeks $5,523.70 "for copies of documents obtained in discovery and documents filed with the court."  *See* Kamin Aff. at ¶ 111.  According to Defendant, these costs were "reasonable and necessary for the defense of this action."  *Id.* at ¶ 113.

Section 1920(4) permits taxation of "[f]ees for exemplification and copies of papers necessarily obtained for use in the case."  *See EEOC*, 213 F.3d at 622.  Copies obtained only for the convenience of counsel are not recoverable.  *See Desisto College, Inc. v. Town of Howey-in-the-Hills*, 718 F. Supp. 906, 913 (M.D. Fla. 1989)(*citing Allen v. Freeman*, 122 F.R.D. 589, 591 (S.D. Fla. 1988)).

The party moving for an award of copy costs has the burden of showing that the copies were necessarily obtained for use in the case.  *See Zunde v. International Paper Co.*, 2000 WL 1763843, *6 (M.D. Fla. July 20, 2000)(stating that the prevailing party bears the burden of proving that the copies were necessary) (*citing Desisto College, Inc.*, 718 F. Supp at 910, n.1).  *See also Helms v. Wal-Mart Stores, Inc.*, 808 F. Supp 1568, 1570 (N.D. Ga. 1992) (noting that the party seeking to recover copy costs "must come forward with evidence showing the nature of the documents copied, including how they were used or intended to be used in the case") (*citing Corsair Asset Management, Inc. v. Moskovitz*, 142 F.R.D. 347, 353 (N.D. Ga. 1992); *Desisto College, Inc.*, 718 F. Supp. at 914).  Where the movant has failed to itemize copies necessarily obtained for use in the case and those that were made for their own convenience, an award of costs may be denied.  *See Desisto College, Inc.*, 718 F. Supp. at 914 (declining to award costs for copies because the defendants failed to itemize copies necessarily obtained for use in the case and those obtained for the convenience of counsel).

This Court concludes that Defendant should not be permitted to recover its copying costs because it has not met its burden with respect to such request.  Defendant provides no description or itemization of its copying costs (*see* Defendant's Exhibit 22) and its conclusory allegation that all of the copies sought were reasonable and necessary is insufficient.  Moreover, Defendant does not indicate the total number of copies made or its fee per page thereby depriving the Court of any basis on which to assess the appropriateness of the costs sought.  Accordingly, Defendant's request for reimbursement of its copying costs should be denied.

### D.  Witness Fees and Service of Process

Finally, Defendant provides essentially no documentation to support its request for $1,650.00 in costs for other witness fees and service of subpoenas.  *See* Defendant's Exhibit 23.  Accordingly, Defendant is not entitled to recover such costs.

### REPORT AND RECOMMENDATION TO THE DISTRICT COURT

In light of the foregoing, this Court **RECOMMENDS** that the District Court:

(1) **GRANT IN PART** Defendant's Motion for Attorneys' Fees (DE 181) and allow Defendant to recover $1,775,602.50 from Plaintiff;

(2) **GRANT IN PART** Defendant's Motion for Costs (DE 181) and allow Defendant to recover $26,196.08 from Plaintiff.

### NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Daniel T. K. Hurley, United States District Court Judge for the Southern

District of Florida, within ten (10) days of being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Warren*, 687 F.2d 347, 348 (11th Cir. 1982), *cert. denied*, 460 U.S. 1087 (1983).  Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein.  *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED**  this 16 day of November, 2009 at West Palm Beach in the Southern District of Florida.

_____
JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE


Copies to:
The Hon. Daniel T. K. Hurley, United States District Court Judge for the Southern District of Florida
Counsel of Record