UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

------------------------------------------------------------------ x
:
TIARA CONDOMINIUM ASSOCIATION, INC.,  :
:
              Plaintiff, : CASE NO.  08-CV-80254
:
    - against - : Judge Daniel T.K. Hurley
: Magistrate Judge James M. Hopkins
MARSH & MCLENNAN COS., INC., *et al.*, :
              Defendant. : ELECTRONICALLY FILED
:
:
:
:
------------------------------------------------------------------ x

**DEFENDANT MARSH USA INC.'S *DAUBERT* MOTION AND MOTION *IN LIMINE*
NUMBER 3 TO PRECLUDE THE TESTIMONY OF TIARA'S PURPORTED EXPERT
WILLIAM HAGER AND MEMORANDUM OF LAW**

      Defendant Marsh USA Inc. ("Marsh") hereby moves for an order precluding Plaintiff Tiara Condominium Association, Inc.'s ("Tiara") from offering the testimony of its purported expert, William Hager.  In support of the motion, Marsh respectfully submits the accompanying memorandum of law and related exhibits.

**MEMORANDUM OF LAW**

**PRELIMINARY STATEMENT**

The testimony of Tiara's expert, William Hager, should be excluded because it fails to meet the test for admissibility under *Daubert v. Merrill Dow Pharms.*, 509 U.S. 579 (1993) and the Federal Rules of Evidence for four reasons. First, Mr. Hager is not qualified to offer the opinions Tiara seeks to introduce. Though Mr. Hager has a long and distinguished career, some of it in the insurance industry generally, his knowledge and experience do not extend to the discrete subject matter of his testimony, *i.e.*, the custom and practice of insurance brokers such as Defendant Marsh in connection with windstorm coverage in Florida. Second, Mr. Hager's opinion was unsupported by even a single example of the actual custom or practice of actual insurance brokers in South Florida. Therefore, it is unreliable because it lacks any basis other than his own say-so and is potentially highly prejudicial to Marsh, given the risk that the jury will simply take Mr. Hager's word on this issue by virtue of his status as a former Iowa State Insurance Commissioner and current member of the Florida legislature representing Palm Beach County. Third, Mr. Hager's opinions improperly encroach on the court's role of instructing the jury on the law. Fourth, Mr. Hager's testimony is improper because it opines on the legal implications of Marsh's conduct and tells the jury what result to reach. For these reasons, Mr. Hager's testimony should be excluded in its entirety. Accordingly, Marsh respectfully submits this memorandum of law in support of its Motion *in limine* No. 3 to preclude the testimony of Tiara's expert, William Hager.

## ARGUMENT

**I. HAGER IS NOT QUALIFIED TO OPINE ON THE SUBJECTS FOR WHICH HE HAS BEEN RETAINED BY TIARA.**

The "proponent" of expert testimony "must demonstrate that the witness is qualified to testify competently[.]" *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005). "It is not enough that a witness is qualified in some way related to the subject matter at hand. Instead, the witness must have special knowledge about the discrete subject on which he or she is to testify." *Konikov v. Orange Cnty., Fla.*, 290 F. Supp. 2d 1315, 1317 (M.D. Fla. 2003). To that end, courts reject experts as unqualified, notwithstanding their conceded expertise in a general area, where they lack knowledge or experience concerning the specific issue on which they have been retained to opine. *See, e.g., Payne v. Redmond Park Hosp., LLC*, 394 F. App'x 601, 603 (11th Cir. 2010) (district court properly found "licensed Georgia physician certified in orthopedic and spine surgery … not qualified to testify about Payne's alleged neurological symptoms"); *Butler v. First Acceptance Ins. Co., Inc.*, 652 F. Supp. 2d 1264, 1272 (N.D. Ga. 2009) (expert's "years of working only for State Farm" did not qualify him "to opine on matters of the broader insurance industry").

According to Mr. Hager's sworn testimony, Tiara has retained him to opine on "the obligations of an insurance agent, broker, in connection with windstorm coverages in Florida during the period of time in question." (Aff. Ex.5, Hager Tr. at 59:4-8.)[1] Mr. Hager also opines on the trajectory of real estate prices generally in Florida during the early-to-mid 2000s. (Aff. Ex.10, Hager Supp. Rep. at 4.) Mr. Hager is not qualified to give expert testimony on either subject.

First, Mr. Hager has no experience concerning the obligations of insurance brokers such as Marsh in connection with the placement of windstorm coverages in Florida during the period of

---

[1] References to "Aff. Ex. __" are to the Affidavit of James Fitzmaurice, dated January 17, 2014 ("Fitzmaurice Aff."), submitted in support of Marsh's Motions *in limine* Nos. 1-6.

- 2 -

time in question.  Mr. Hager has stated under oath that he has never (a) been "licensed as an insurance broker" (Aff. Ex. 5, Hager Tr. at 64:23-65:2); (b) "operated or acted as an insurance broker or insurance agent in any transaction" (*Id.* at 65:3-6); (c) "worked for an insurance brokerage" (*Id.* at 65:13-15); or (d) "underwritten an insurance policy" (*Id.* at 65:17-19).  Instead, Mr. Hager's experience with the obligations of insurance brokers came as a regulator in Iowa—a state in which there is scant demand for windstorm coverage for damage caused by hurricanes.  Even that irrelevant experience ended in 1990, more than a decade before the relevant time period here.  (Aff. Ex. 11, Hager Rep. at 2; Aff. Ex. 10, Hager Supp. Rep., Ex. A (*curriculum vitae*).)

Tiara itself has argued that insurance experience in another state does not render an expert qualified to opine on the Florida insurance market, given that insurance markets and practices vary widely from state to state.  As Tiara told this Court previously:

> Marsh's proposed experts lack the requisite knowledge, skill, experience, training, or education with respect to the customs, practice, and laws governing the insurance industry in the State of Florida.  The education and experience of Mr. Stanovich and Mr. Stempel do not evidence fluency with the idiosyncrasies of the Florida insurance industry or an insurance policy issued <u>only</u> in Florida.  The regulation of the insurance industry is an essential state function, and as such, the rules and regulations governing the industry will vary from state to state.

(Tiara Mot. *in limine* [Dkt. No. 118] at 9-10 (internal citations omitted).)  *See also Gilman v. John Hancock Variable Life Ins. Co.*, No. 02-00051 AB, 2003 WL 23191098, at *14 (Fla. Cir. Ct. Oct. 20, 2003) ("Many states [have] recogniz[ed] that the various states' [insurance] laws and regulations are not uniform…").  Accordingly, Mr. Hager's experience as an Iowa insurance regulator over two decades ago does not qualify him to opine on "the obligations of an insurance agent, broker, in connection with windstorm coverages in Florida during the period of time in question" (Aff. Ex. 5, Hager Tr. at 59:4-8), because this experience does not give him "special

- 3 -

knowledge about the discrete subject on which he … is to testify." *Konikov*, 290 F. Supp. 2d at 1317.

Nor does Mr. Hager's experience in the Florida market as President of the National Counsel of Compensation Insurance ("NCCI") from 1990 to 1998 provide him with the necessary qualifications. By Mr. Hager's own admission, NCCI never "perform[ed] underwriting functions in connection with the issuance of any insurance policy" and "NCCI dealt solely with worker's comp insurance," not windstorm coverage." (Aff. Ex.5, Hager Tr. at 66:6-10, 15-17.) *Butler*, 652 F. Supp. 2d at 1272-73 (experience in one area of the insurance industry does not render an expert qualified to testify about others in which he has not worked).

Mr. Hager also is not qualified to opine on Florida real estate values. He concededly lacks any training or experience in this field. (*See* Aff. Ex. 10, Hager Supp. Rep., Ex. A (*curriculum vitae*).) His opinion is based entirely on information he downloaded from the Internet. (Aff. Ex. 5, Hager Tr. at 207-08.) Even if Mr. Hager were qualified to opine on the subject, his testimony is still inadmissible because it amounts to only generalized knowledge of the overall Florida real estate market during the early-to-mid 2000s, a concept that is not beyond the understanding of a layperson. *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985) (expert testimony properly excluded as "valueless, since the expert could offer nothing beyond the understanding and experience of the average citizen"). Indeed, Mr. Hager himself testified that the rise in Florida real estate prices during this period was something "generally understood" (Aff. Ex. 5, Hager Tr. at 165:23-24), and would have been known to anyone actively engaged in commerce in Florida (*Id.* at 11:4-8). Mr. Hager's opinion as to Florida real estates price is therefore inadmissible. *Rouco*, 765 F.2d at 995.

## II.     HAGER'S TESTIMONY AS TO THE CUSTOM AND PRACTICE OF INSURANCE BROKERS SHOULD BE EXCLUDED AS UNRELIABLE.

"*Daubert* requires that trial courts act as 'gatekeepers' to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).  "[T]he Rules of Evidence—especially Rule 702 … assign the trial judge the task of ensuring that an expert's testimony … rests on a reliable foundation." *Daubert*, 509 U.S. at 597.  "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (*en banc*) (quoting Fed. R. Evid. 702 advisory committee's note).

Mr. Hager opines that it is "custom and practice" for brokers to advise clients to increase their insurance coverage to reflect a purported hurricane demand premium that allegedly drives up the cost of repairs by 25% in the year following a hurricane, such as by obtaining an appraisal that reflects this purported premium in the replacement cost value.  (Aff. Ex. 5, Hager Tr. at 134:8-19.) By Mr. Hager's own admission, his opinion on industry custom and practice is based on what brokers like Marsh do in "comparable situations" (*Id.* at 140:2-8) or what "is generally done in the industry" (*Id.* at 134:22-24).  But Mr. Hager was unable to identify even a single instance of a broker advising a client to increase insurance coverage to reflect a purported hurricane demand premium, notwithstanding his opinion that doing so represents "custom and practice" in the insurance brokerage industry.  (*Id.* at 158:14-159:2.)  Nor could Mr. Hager identify a single instance where a broker had an appraisal redone to reflect this purported hurricane premium.  (*Id.* at 132:19-133:12 ("Can I cite such an instance?  No.").)  Instead, Mr. Hager offered nothing more than his say-so that industry custom and practice required Marsh to advise Tiara to increase its insurance coverage to reflect a purported hurricane damage premium.  (*See Id.* at 135:9-10 (relying on his "belie[f] as an expert").)

Mr. Hager's inability to provide examples of what he says is custom and practice is not surprising given his lack of experience. It also is unsurprising because two other witnesses just recently proffered by Tiara directly contradicted his testimony. Gary Maehl and Peter Sharrock of Allied Appraisal, Inc., the company that performed the appraisals of the Tiara at issue in this case, testified that in their combined fifty years of experience, they had never been asked by a client, its insurance broker, or anyone else to change an appraisal in order to account for a post-hurricane demand premium. (Aff. Ex. 3, Maehl Tr. at 6:18-25, 15:8-18:2; Aff. Ex. 4, Sharrock Tr. at 7:18-20, 25:13-26:25.) Maehl also testified that he was "not aware of" a single insurer "that is willing to insure for a hurricane demand premium." (Aff. Ex. 3, Maehl Tr. at 16:19-22.)

Furthermore, Mr. Hager's opinion that it is custom and practice for brokers to advise clients to increase their insurance coverage to reflect a purported hurricane damage premium rests entirely on a premise – prices for labor and materials spike in the year following a hurricane – that is contradicted by Tiara's own expert, Daniel Tinney, an architect, who unlike Mr. Hager, has extensive experience rebuilding hurricane-damaged properties in South Florida. Tinney has testified under oath that following Hurricanes Frances and Jeanne, standard labor costs of $25/hour were available and the cost of materials remained steady due to Florida's strict laws against price-gouging. (Aff. Ex. 8, Tinney Tr. at 176:17-24.) *See* Fla. Stat. § 501.160 (2002). Accordingly, Mr. Hager's opinion should be excluded for the additional reason that its very premise is contradicted by Tiara's own expert. *See Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1367 (S.D. Fla. 2009) ("Teledyne contends that Mr. Sommer's opinion … should be excluded because it is overly speculative and conflicts with the evidence. The Court agrees.").

Finally, Mr. Hager's status as a former Iowa state insurance commissioner and current Florida state legislator in Palm Beach County creates a heightened need to ensure that his opinions are properly before the jury, *i.e.*, that they satisfy all the requirements of *Daubert* and the Federal

- 6 -

Rules of Evidence, including Rule 403. *Frazier*, 387 F.3d at 1263 ("Indeed, the judge in weighing possible prejudice against probative force under Rule 403 exercises more control over experts than over lay witnesses. Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse.") (internal citation, quotations, and ellipsis omitted). Thus, even if Mr. Hager's unsubstantiated opinion as to the custom and practice of insurance brokers met the test for reliability under *Daubert* – and it does not – any probative value is substantially outweighed by the risk of prejudice to Marsh from "lay jurors … assign[ing] talismanic significance" to this opinion given Mr. Hager's status as a former Iowa insurance commissioner and current Florida legislator representing at least some of the jury pool, making his opinion inadmissible under Rule 403 as well. *Id.*

Because "[t]he trial court's gatekeeping function requires more than simply 'taking the expert's word for it,'" Mr. Hager's opinion that it is custom and practice for brokers to advise clients to increase their insurance coverage to reflect a purported hurricane damage premium should be excluded as "unreliable." *Frazier*, 387 F.3d at 1261 (quoting Fed. R. Evid. 702 advisory committee's note); *Mich. Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 921 (11th Cir. 1998) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.").

### III. HAGER'S TESTIMONY SHOULD BE EXCLUDED BECAUSE IT PURPORTS TO INSTRUCT THE JURY ON THE LAW.

"[D]omestic law is not to be presented through testimony and argued to the jury as a question of fact." *United States v. Oliveros*, 275 F.3d 1299, 1306-07 (11th Cir. 2001). Rather, "[i]t is the Court's function to instruct the jury on the law, not the parties through their expert witnesses." *Goldman v. Bracewell & Patterson L.L.P.*, No. 6:04-cv-725-Orl-28JGG, 2005 WL

5740234, at *4 (M.D. Fla. Sept. 13, 2005) (an expert may not offer such testimony either "directly or as the foundation for his other opinions").

Thus, courts routinely exclude expert testimony that tells the jury what the law is, such as "whether Defendants owed [plaintiff] a fiduciary duty," *id.*, or the particular "standard of care" to which a party "is subject." *SEC v. Big Apple Consulting USA Inc.*, No. 6:09-cv-1963, 2011 U.S. Dist. LEXIS 95292, at *14 (M.D. Fla. Aug. 25, 2011); *Butler*, 652 F. Supp. 2d at 1272 ("[T]he court notes that the great bulk of Mr. Jenkins' proposed testimony sets forth legal standards for insurers under Georgia law. The jury, however, is not to receive its instructions of law from a party's expert, rather it receives them from the judge."). By contrast, experts may opine as to the nature of the obligation that a particular standard of care requires, such as whether certain conduct would be considered "reasonable," but cannot go beyond that and express an "opinion regarding the proper legal standard that should be applied." *Big Apple Consulting*, 2011 U.S. Dist. LEXIS 95292, at *15.

Mr. Hager's proposed expert testimony runs afoul of this well-established rule because he opines as to the particular legal duty that Marsh allegedly owed to Tiara, both directly and as a predicate for his other opinions. That is, Mr. Hager opines directly that "Marsh had a special relationship with Tiara, one that called upon a heighten [*sic*] duty of care from Marsh to Tiara in all of Marsh's actions." (Aff. Ex. 11, Hager Rep., Question No. 1.) This opinion then forms the foundation of Mr. Hager's other opinions as to what Marsh's duty of care purportedly required it to do. (*Id.*, Question No. 8; Aff. Ex. 10, Hager Supp. Rep., Question Nos. 1-2, 4-5.)

In opining on the particular legal duty that Marsh purportedly owed to Tiara, be it "directly" or as the "foundation for his other opinions," Mr. Hager's testimony improperly invades the exclusive province of the Court to "instruct the jury on the law" and therefore should be excluded. *Goldman*, 2005 WL 5740234, at *4 (precluding Plaintiff's expert from "giv[ing] the

jury examples of what conduct does or does not breach the standard [of care]"); *Butler*, 652 F. Supp. 2d at 1272 (excluding "proposed testimony set[ting] forth legal standards for insurers under Georgia law").

### IV. HAGER'S TESTIMONY SHOULD BE EXCLUDED BECAUSE IT TELLS THE JURY WHAT RESULT TO REACH AND OPINES ON THE LEGAL IMPLICATIONS OF MARSH'S CONDUCT.

"An expert may testify as to his opinion on an ultimate issue of fact. Fed. R. Evid. 704. An expert may not, however, merely tell the jury what result to reach." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). "A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Id. See also Cook*, 402 F.3d at 1012 n.8 ("courts must remain vigilant against the admission of legal conclusions").

Although Mr. Hager's testimony purports to state "what a reasonable insurance agent, broker and advisor would and should do in comparable circumstances" (Aff. Ex. 11, Hager Rep. at 2), his testimony goes well beyond that and opines as to the legal implications of Marsh's conduct, telling the jury exactly what result to reach. Indeed, Mr. Hager summarizes his own Supplemental Report as "Marsh breached its duty of care to Tiara," followed by a list of actions that he considers a "breach" of those duties. (Aff. Ex. 10, Hager Supp. Rep. at 2.) Likewise, both of Mr. Hager's reports are replete with opinions that Marsh "breached" its alleged duties to Tiara:

- "In so doing (and in failing to do so), Marsh breached its applicable duty of care." (Aff. Ex. 11, Hager Rep. at 12; *id.* at 15 (same).)

- "Marsh … breached its related obligations and responsibilities." (Aff. Ex.10, Hager Supp. Rep. at 3.)

- "Marsh breached the applicable standard of care and custom and practice in the industry … when it failed to inform Tiara that Citizens had requested a copy of the 2002 appraisal …" (*Id.* at 5.)

- "Surely the Citizens' request for the 2002 appraisal, given the context, was a significant development and Marsh's failure to so advise Tiara was a breach of its obligations and responsibilities toward Tiara." (*Id.*)

- 9 -

- "Marsh breach[ed] its obligation and responsibility because it failed to advise Tiara to obtain sufficient coverage (i) to satisfy Tiara's coinsurance obligations under the policy and (ii) to restore Tiara in the event of a hurricane." (*Id.* at 6.)

Courts have not hesitated to exclude purported expert testimony such as this because it opines as to the "legal implications of [a party's conduct] or tells the jury "what result to reach." *Montgomery*, 898 F.2d at 1541 ("Donaldson testified that in his opinion Aetna had a duty to hire tax counsel in this case. This was a legal conclusion, and therefore should not have been admitted."); *Goldman*, 2005 WL 5740234, at *4 (precluding expert from (a) testifying "whether Defendants breached a fiduciary duty or standard of care"; (b) "giv[ing] the jury examples of what conduct does or does not breach the standard [of care]"; and (c) "offer[ing] testimony as to the legal implications of conduct"); *Jones v. Reynolds*, No. 2:06cv57, 2008 U.S. Dist. LEXIS 40120, at *31 (N.D. Miss. May 16, 2008) ("Dinsmore [Plaintiff's expert on the obligations of insurance adjusters] is not precluded from testifying as to the standard of conduct and explaining the conduct of the persons involved in the Plaintiff's claim. He is not permitted to draw conclusions from those standards and explanations of conduct, as this is a determination for the jury.").

Nor is expert testimony on this subject necessary. Once the duties of a broker are explained to the jury, the jury is fully capable of determining – based on the evidence adduced in the case – whether those duties have been met. *Jones*, 2008 U.S. Dist. LEXIS 40120, at *31 (it is "for the jury" to "draw conclusions" as to whether an insurance professional has met the standard of care). Accordingly, the Court should preclude Mr. Hager's proposed testimony on the legal implications of Marsh's alleged conduct, including his assertions that Marsh breached its duty to Tiara.

## **CONCLUSION**

For all of the foregoing reasons, Marsh respectfully submits it is entitled to an order *in limine* precluding Mr. Hager's purported expert testimony from trial.

Dated:  January 17, 2014					Respectfully submitted,

By: /s/ Chris S. Coutroulis

**WILLKIE FARR & GALLAGHER LLP**

Mitchell J. Auslander (*pro hac vice*)
*mauslander@willkie.com*
Christopher J. St. Jeanos (*pro hac vice*)
*cstjeanos@willkie.com*
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-9000

**CARLTON FIELDS JORDEN BURT, P.A.**

Chris S. Coutroulis
Florida Bar No. 300705
*ccoutroulis@cfjblaw.com*
Corporate Center Three at
    International Plaza
4221 West Boy Scout Blvd.
Suite 1000
Tampa, FL  33607-5780
Telephone:     (813) 229-4301
Facsimile:      (813) 229-4133

*Attorneys for Defendant Marsh USA Inc.*

## STATEMENT PURSUANT TO LOCAL RULE 7.1(A)(3)

Counsel for Marsh has conferred with counsel for Tiara to attempt to resolve the issues raised by this motion but has been unable to resolve them.

  /s/ Chris S. Coutroulis  ___

**WILLKIE FARR & GALLAGHER LLP**

Mitchell J. Auslander (*pro hac vice*)
*mauslander@willkie.com*
Christopher J. St. Jeanos (*pro hac vice*)
*cstjeanos@willkie.com*
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-9000

**CARLTON FIELDS JORDEN BURT, P.A.**

Chris S. Coutroulis
Florida Bar No. 300705
*ccoutroulis@cfjblaw.com*
Corporate Center Three at
    International Plaza
4221 West Boy Scout Blvd.
Suite 1000
Tampa, FL  33607-5780
Telephone:     (813) 229-4301
Facsimile:     (813) 229-4133

  *Attorneys for Marsh USA Inc.*

- 13 -

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Defendant Marsh USA Inc.'s Motion *In Limine* Number 3 To Preclude The Testimony Of Tiara's Purported Expert William Hager And Memorandum Of Law.

/s/ Chris S. Coutroulis
Chris S. Coutroulis

Case No.:  9:08-cv-80254-DTKH

## SERVICE LIST

Mark L. McAlpine
Don W. Blevins
Marcus R. Sanborn
David Michael Zack
**McAlpine P.C.**
3201 University Drive
Suite 100
Auburn Hills, MI 48326-2361
Telephone: 248-373-3700
Fax: 248-373-3708
Email: mlmcalpine@mcalpinepc.com

Richard H. Bergman
**Bergman & Jacobs PA**
2001 Hollywood Boulevard
Suite 200
Hollywood, FL 33020
Telephone: 954-923-3533
Fax: 954-883-3421
Email: rbergman@bj-law.com

Chris S. Coutroulis
Florida Bar No. 300705
**Carlton Fields Jorden Burt, P.A.**
Corporate Center Three at
    International Plaza
4221 West Boy Scout Blvd.
Suite 1000
Tampa, FL  33607-5780
Telephone:     (813) 229-4301
Facsimile:     (813) 229-4133
Email: ccoutroulis@cfjblaw.com

Mitchell Jay Auslander
Christopher J. St. Jeanos
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue
New York, NY 10019-6099
Telephone: 212-728-8000
Fax: (212) 728-9000
Email: mauslander@willkie.com

James Timothy Haley
**Haley and Jones, P.A.**
1500 San Remo Avenue
Suite 222
Coral Gables, FL 33146
Telephone: 305-661-4637
Fax: 305-661-4640
Email: jthaley@hsaaLegal.com